## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARTIN J. HAYES,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:14-0714** |
| | : | |
| **v.** | : | **(JUDGE MANNION)** |
| | : | |
| **RELIANCE STANDARD LIFE** | | |
| **INSURANCE COMPANY, et al.,** | : | |
| | : | |
| **Defendants** | : | |
| | : | |

## M E M O R A N D U M

Plaintiff is a self-employed, independent general contractor who is a member of the Pennsylvania Builders Association ("PBA"). The PBA offered members the opportunity to apply for short and long term disability ("STD" and "LTD") insurance and life insurance through an advertisement it sent to its members. Defendant JRG Advisors LLC ("JRG") was the broker for these insurance policies, and defendant Reliance Standard Life Insurance Company ("Reliance") was the issuer/underwriter of these policies. Plaintiff submitted an application for benefits to JRG. He was issued policies for STD, LTD, and life insurance, and timely paid his premiums. Thereafter, plaintiff suffered a rotator cuff injury and became disabled. He received STD benefits, and applied for LTD benefits under his policy. Reliance determined that plaintiff was not eligible for LTD benefits under his policy because the policy covers

only employees of the PBA and plaintiff did not submit proof that he was a PBA member. Plaintiff then brought suit for breach of contract, bad faith, and negligence in state court. Defendants, believing that the policies in question are covered by the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. §1001, et seq., removed the case to this court. At issue is whether ERISA applies to plaintiff's claims, and accordingly, whether the court has subject matter jurisdiction over the case.

## I.    BACKGROUND

Plaintiff Martin J. Hayes is a general contractor in the Scranton area. He is self-employed and a sole proprietor. He was a member of the PBA, (Doc. 1, at ¶ 8), a non-profit trade association affiliated with the National Organization of Home Builders.[1] Plaintiff was not employed by PBA or any of its affiliates. The PBA is a network of local associations that represent the needs of the building industry. Sometime before April 2012, the PBA offered its members the opportunity to apply for STD, LTD, and life insurance policies through its local associations. JRG was the broker chosen to provide insurance benefits offered to the PBA members. Reliance was the insurance company offering the policies. The policies offered by Reliance for PBA members were issued to Builders Services, Inc., and not directly to the PBA.

---

[1]The PBA's website is http://www.pabuilders.org.

(Doc. 35, at 3). Employers participating in the PBA members policies ("PBA members Plan") had to pay 100% of the premiums for all eligible employees and, for an employer to participate in the PBA members policies, all full-time employees had to enroll. (Doc. 21, Ex. A, ¶'s 9-10).

Plaintiff contacted JRG to ask about the insurance benefits the PBA had advertised to its members. JRG had an agreement with the PBA to market and provide insurance products to members of the PBA. Plaintiff submitted an application for benefits to JRG on April 23, 2012. He was issued policies for STD, LTD, and life insurance by defendant Reliance, and timely paid all of his premiums for the policies.[2] In July of 2013, plaintiff sustained a rotator cuff tear in his left shoulder that totally disabled him from working. He made a claim for STD benefits and it was approved by Reliance. Before the STD benefits ended, he applied for LTD benefits. Reliance asked plaintiff to provide his most recent pay stubs, and plaintiff repeatedly informed Reliance that he was a self-employed contractor and could therefore not supply pay stubs. Plaintiff's STD benefits exhausted on October 15, 2013. Reliance advised plaintiff on December 9, 2013, that his LTD claim was denied because the LTD policy for the PBA only covered PBA employees. (Doc. 5, Ex. A). As plaintiff was not a PBA employee, Reliance informed plaintiff that

---

[2]Policy No. LTD 121539 was made available only to members of the PBA. (Doc. 21, Ex. A, ¶ 4); (Doc. 21, Ex. C). Plaintiff alleged that he is a member of the PBA. (Doc. 1, ¶ 8). Thus, the policy at issue is the LTD policy under the PBA members Plan.

he was not a member of the class eligible for the LTD plan, and that a separate policy issued to "Builders Services, Inc." covered PBA members. (Doc. 21, Ex. C). Plaintiff's claim for LTD benefits was also denied since "both plaintiff and [the] PBA failed to provide any proof that he was a member of the Association." (Doc. 21, Ex. A, ¶ 5). In short, plaintiff's claim was denied since Reliance did not receive documentation from the PBA that he was a member of an eligible class. (Doc. 5, Ex. A). The December 9, 2013 letter also advised plaintiff that he could request review of the decision denying his claim for LTD benefits by submitting a written request to Reliance and he was advised that his "written request for review must be submitted within 180 days of your receipt of this letter." (Doc. 5, Ex. A). Further the letter notified plaintiff as follows:

> In the event that your claim is subject to the Employee Retirement Income Security Act of 1974 ("the Act"), you have the right to bring a civil action under section 502(a) of the Act following adverse benefit determination on review. Your failure to request a review within 180 days of your receipt of this letter may constitute a failure to exhaust the administrative remedies available under the Act, and effect you ability to bring civil action under the Act.

(Id.).

Since October of 2013, when his STD benefits ended, plaintiff has not had disability benefits and he has continued to be disabled and unable to work. Plaintiff then filed an action in state court against Reliance, JRG, and

the PBA[3] alleging breach of contract, bad faith, negligence, and detrimental reliance regarding the denial of his LTD claim. The two claims against Reliance are breach of contract and bad faith, Counts I and II, and they relate to the denial of plaintiff's claim for LTD benefits. Plaintiff seeks compensatory damages as well as punitive damages.

This action was removed from the Court of Common Pleas of Lackawanna County with the consent of all defendants. (Doc. 1). Defendant Reliance argues that the state law breach of contract claim asserted in plaintiff's complaint was actually a claim for the denial of benefits due to him under the terms of an employee benefits plan and, as such, was preempted by ERISA. Defendant Reliance filed a motion to dismiss the case, (Doc. 4), which has been briefed. (Docs. 5, 10, and 21). Plaintiff has filed a motion to remand his case to state court, (Doc. 6), which has also been briefed. (Docs. 7, 22, and 23). The court held oral argument on the issues surrounding the pending motions, and ordered supplemental briefing. (Docs. 33, 35, 39, and 41). Defendant JRG filed an answer to plaintiff's complaint with affirmative defenses, including the defense that plaintiff fails to state a claim upon which relief can be granted. (Doc. 20).

---

[3]The PBA has since been dismissed from the case. (Doc. 28).

## II.   LEGAL STANDARDS

### A. Motion to Remand

Under 28 U.S.C. §1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States." Thus, a defendant may remove from state court to federal court any civil case arising under federal law. See 28 U.S.C. §1441(b).

Upon a motion to remand a removed action, the removing party bears the burden of demonstrating that removal was proper. Scanlin v. Utica First Ins. Co., 426 F. Supp. 2d 243, 246 (M.D. Pa. 2006) (*citing* Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)). "The party asserting jurisdiction bears the burden of showing the action is properly before the federal court." Id.

In considering a motion to remand, the court must construe the statute governing removal, 28 U.S.C. §1441, strictly, and against removal. Id. (*citing* Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 219 (3d Cir. 2005) (citations omitted)). Moreover, ruling on the removal of any action is the prerogative of the federal courts. Id. (*citing* Harrison v. St. Louis & S.F.R. Co., 232 U.S. 318, 329 (1914) ("as the right given to remove by the United States law is paramount, it results that it is also of the essence of the right to remove, that when an issue of whether a prayer for removal was rightfully asked arises, a Federal question results which is determinable by the courts of the United

States free from limitation or interference arising from an exertion of state power")).

The Court in *The Bachman Co. v. MacDonald*, 173 F. Supp. 2d 318, 322 (E.D. Pa. 2001), summarized the removal standard as follows:

> In general, a party is able to remove a civil action filed in state court to federal court if the federal court would have had original jurisdiction to hear the matter. *Lumbermans Mut. Cas. Co. v. Fishman*, No. 99-0929, 1999 WL 744016, at *1 (E.D. Pa. Sept. 22, 1999) (citing 28 U.S.C. §1441(b) (1999); *Boyer v. Snap-On Tools Corp.*,913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085,111 S.Ct. 959, 112 L.Ed.2d 1046 (1991)). Once the case has been removed, however, "the federal court may remand if there has been a procedural defect in removal." *Kimmel v. DeGasperi*, No. 00-143, 2000 WL 420639, at *1 (E.D. Pa. Apr. 7, 2000) (citing 28 U.S.C. §1447(c) (West 1994)). Remand is mandatory if the court determines that it lacks federal subject matter jurisdiction. *Id.* (citing 28 U.S.C. §1447(c) (West 1994)). "When a case is removed from state court, the removing party bears the burden of proving the existence of federal subject matter jurisdiction." *Id.* (citing *Boyer*, 913 F.2d at 111).

"Removal statutes are strictly construed by courts and all doubts are resolved in favor of remand." *Id*. (citations omitted).

The court in *Macias v. California Law Enforcement Ass'n*, 2009 WL 1621303, *2 (N.D. Cal. June 5, 2009), considered removal in the context of ERISA and stated that "[r]emoval is proper when any of the claims alleged in the pleadings are preempted by ERISA." (citing *In re Miles*, 430 F.3d 1083, 1088 (9th Cir. 2005)). The court further stated:

> Section 514(a) of ERISA preempts "'any and all State laws insofar as they ... relate to any employee benefit plan' "governed by ERISA. *See Golden Gate Restaurant Ass'n v. City and County of San Francisco*, 546 F.3d 639, 648 (9th Cir. 2008) (quoting 29

7

U.S.C. §1144(a)). To show that a state law cause of action is preempted, the defendant must establish that the plaintiff's claims are based on a plan that qualifies as an "employee welfare benefit plan" under ERISA. Kanne v. Connecticut Gen. Life Ins. Co., 867 F.2d 489, 492 n. 4 (9th Cir. 1988). If the cause of action is not preempted by ERISA, the case must be remanded. See Providence Health Plan v. McDowell, 385 F.3d 1168, 1171 (9th Cir. 2004).

Id. (footnote omitted); *see also* Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 62, 66, 107 S.Ct. 1542 (1987) (Supreme Court held that under civil enforcement provision of ERISA, 29 U.S.C. §1132(a), all state law claims that relate to an employee benefit plan which is governed by ERISA are preempted).

"In order to survive a motion to remand, a defendant removing a case on the basis that a plaintiff's state law claims are preempted by ERISA must prove by a preponderance of the evidence that the policy at issue is an ERISA plan." Regan v. Coventry Health & Life Ins. Co., 2012 WL 2864474, *2 (N.D.W.Va. July 11, 2012) (citations omitted).

### B. Motion to Dismiss

The defendant's motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the

8

complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. See Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not

physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

## III.   DISCUSSION

Plaintiff concedes that if the insurances policies written through Reliance are covered by ERISA, then his current causes of action regarding his claim for LTD would not be applicable, as ERISA preempts those claims. (Doc. 43, at 39-40). If ERISA does not apply, then the court lacks federal question subject matter jurisdiction over this matter and it must be remanded to state court. Thus, the court must first determine whether ERISA applies to Mr. Hayes' LTD benefits in the PBA members Plan he purchased through Reliance. Plaintiff maintains that the Third Circuit in Matinchek v. John Alden

Life Ins. Co., 93 F.3d 96, 101 (3d Cir. 1996), held that ERISA does not govern a plan that is solely an insurance policy in which the only beneficiaries are the company's owners. Since plaintiff was self-employed and a sole proprietor, he contends that he could not have a plan covered by ERISA under the binding precedential *Matinchek* case.

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." Edmonson v. Lincoln Nat. Life Ins. Co., 725 F.3d 406, 413 (3d Cir. 2013) (citing Ingersoll-Rand Co. v Pl. McClendon, 498 U.S. 133, 137 (1990)). ERISA covers employee welfare benefit plans and employee pension benefit plans. 29 U.S.C. §1002. At issue in this case is an employee welfare benefit plan.

"An employee welfare benefit plan is defined as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment ...."

Leonard v. Educators Mut. Life. Ins. Co., 620 F.Supp. 2d 654, 662 (E.D. Pa. 2007) (*quoting* 29 U.S.C. §1002(1)).

The Third Circuit has laid out the following test for determining whether an ERISA plan exists:

> "[T]he crucial factor in determining whether a 'plan' has been established is whether the employer has expressed an

11

intention to provide benefits on a regular and long-term basis."
Diebler v. Local Union 23, 973 F.2d 206, 209 (3d Cir. 1992)
(quotations and citation omitted). In short, a plan under ERISA "is
established if from the surrounding circumstances a reasonable
person can ascertain the intended benefits, a class of
beneficiaries, the source of financing, and procedures for
receiving benefits." Donovan v. Dillingham, 688 F.2d 1367, 1373
(11th Cir. 1982); see also Henglein v. Informal Plan for Planned
Shutdown Benefits for Salaried Employees, 974 F.2d 391, 399
(3d Cir. 1992); Deibler, 973 F.2d at 209 (quoting Donovan as the
"prevailing standard for determining whether a 'plan' within the
meaning of ERISA has been established"). "Whether a plan exists
within the meaning of ERISA is 'a question of fact, to be answered
in light of all the surrounding facts and circumstances and from
the point of view of a reasonable person.'" Deibler, 973 F.2d at
209 (quoting Wickman v. Northwestern National Ins. Co., 908
F.2d 1077, 1083 (1st Cir. 1990)).

Minnis v. Baldwin Bros. Inc., 150 F.App'x 118, 119-20 (3d Cir. 2005). The

prevailing standard applicable in the Third Circuit for determining the

existence of a plan, "provides that an ERISA plan exists if 'from the

surrounding circumstances a reasonable person can ascertain the intended

benefits, a class of beneficiaries, the source of financing, and procedures for

receiving benefits.'" Solis v. Koresko, 884 F.Supp.2d 261, 275 (E.D.Pa. 2012)

(quoting Gruber v. Hubbard Bert Karle Weber, Inc., 159 F.3d 780, 789 (3d Cir.

1998) (citing Deibler v. Local Union 23, 973 F.2d 206, 209 (3d Cir. 1992);

Donovan v. Dillingham, 688 F.2d 1367 (11th Cir. 1982)).

Even if a court determines that a plan is covered by ERISA, then "safe

harbor" provisions may apply, as "certain practices" "do not constitute

employee welfare benefit plans" for the purposes of Title I of ERISA. 29

C.F.R. §2510.3-1(j).

> For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. §2510.3-1(j).

The regulations promulgated by the Secretary of Labor clarifying the definitions in §1002, provide:

> (c) Employees. For purposes of this section:
>
> (1) An individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse, and
>
> (2) A partner in a partnership and his or her spouse shall not be deemed to be employees with respect to the partnership.

29 C.F.R. 2510.3-3(c). "The Supreme Court has clarified that these regulations apply to the threshold issue of whether an ERISA plan exists, 'not to the statutory definitions of participant and beneficiary.'" Leonard v. Educators Mut. Life. Ins. Co., 620 F.Supp. 2d at 662-63 (quoting Yates v.

Hendon, 541 U.S. 1, 20, 124 S.Ct. 1330, 158 L.Ed.2d 40 (2004)).

ERISA defines the term "participant" as follows:

> The term "participant" means any employee or former
> employee of an employer, or any member or former
> member of an employee organization, who is or may
> become eligible to receive a benefit of any type from
> an employee benefit plan which covers employees of
> such employer or members of such organization, or
> whose beneficiaries may be eligible to receive any
> such benefit.

29 U.S.C. §1002(7).

### A. Whether the PBA is an Employee Organization

In order for the PBA members Plan to be an ERISA plan, it must be established or maintained by an employer or employee organization. 29 U.S.C. §1002(1). There is no question that the PBA was not plaintiff's employer.[4] Thus, to determine whether ERISA governs plaintiff's plan, the court must first determine whether the PBA is an employee organization. If the PBA is not an employee organization, ERISA does not apply and this case must be remanded to state court for lack of subject matter jurisdiction.

Plaintiff relies heavily on the fact that he is not anyone's employee, believing that this demonstrates that he cannot thus be a part of any employee organization. However, whether the Pennsylvania Builder's

---

[4]While the PBA did have employees, plaintiff was not an employee of the PBA, and Reliance had a separate policy which was issued for PBA employees which is not at issue herein.

Association is an employee organization, and whether it maintains or establishes the plan in question, are not questions that can be answered solely by looking to plaintiff's employment status. Employee organizations can also establish an employee benefit plan in addition to an employer. Thus, in the present case, the relevant inquiry is not whether plaintiff established an employee benefit plan or whether he is precluded from doing so under *Matinchek* because he is the sole proprietor of his contracting business and the only participant from his business in the plan, rather the pertinent inquiry is whether the PBA, which established and sponsored the plan at issue, is an employee organization under ERISA. Reliance argues that the PBA plan is an employee welfare benefit plan governed by ERISA because the PBA is an employee organization.

> "The term "employee organization" means any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships; or any employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan."

29 U.S.C. §1002(4). The PBA is not an "employees' beneficiary association." (Doc. 41, at 2). Thus, the court must determine whether the PBA "is an organization which exists, at least in part, to deal with its members' employers concerning employment matters." Papale v. Reliance Standard Life Ins. Co., 2010 WL 2195294, *2 (W.D.La. May 26, 2010). "Factors commonly

15

considered in determining whether an organization falls within the statutory definition include the composition of the group's membership, its activities on behalf of members vis-a-vis employers, and whether the group deals with one or multiple employers (if any)." Id. (citations omitted).

In *Papale*, the decedent was an assistant district attorney and he was a member of the National District Attorney's Association ("NDAA"). Decedent bought a Voluntary Group Term Life Insurance Policy with Reliance that had a $50,000 life benefit and named his two children as beneficiaries. Decedent then applied for $10,000 additional life insurance coverage from Reliance with his wife as beneficiary, and Reliance denied his second application. After decedent died, Reliance paid his wife the death benefit on the first policy. Decedent's family then filed a breach of contract action against Reliance in state court. Reliance removed the case to federal court stating that ERISA preempted the claim and, decedent's family filed a motion to remand the case since they claimed the policy was not covered under ERISA. In *Papale*, the court held that the NDAA was not an employee organization under ERISA. The court basically found that the NDAA did not advocate on behalf of its prosecutor members regarding matters related to their employment relationship with the district attorney's offices from all over the United States and thus, the NDAA was not an employee organization under ERISA.

As in the present case where the PBA was not plaintiff's employer, the NDAA was not the employer of the decedent in *Papale*. Also, like the present

16

case where the PBA is not an employees' beneficiary association, the NDAA was not an employees' beneficiary association. The court in *Papale* then discussed why it found that the NDAA was not an employee organization under ERISA and stated:

> In this instance, although the plan was marketed to members of the NDAA, there is no evidence that the NDAA had the role of "dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships." 29 U.S.C. §1002(4).FN2 This is an essential element of the definition and, on these facts, there is a substantial disconnect. See Hansen v. Cont'l Ins. Co., 940 F.2d 971, 977–78 (5th Cir. 1991) ("The fact that a 'plan' exists, however, does not necessarily mean that the plan is an ERISA plan .... [because] 'an employer or employee organization ... must establish or maintain the plan, fund, or program.' ") (quoting Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982)). Reliance merely marketed insurance to members of the NDAA, which was not the decedent's employer. The decedent's membership in the NDAA was voluntary and direct, and was not a requirement of nor a benefit offered by his employer as part of an Employee Welfare Benefit Plan. Contra Donovan, 688 F.2d at 1371 ("The gist of ERISA's definitions of employer, employee organization, participant, and beneficiary is that a plan, fund, or program falls within the ambit of ERISA only if the plan, fund, or program covers ERISA participants because of their employee status in an employment relationship, and an employer or employee organization is the person that establishes or maintains the plan, fund, or program."). Aside from the very nature of the decedent's role as a prosecutor, then, his membership in the NDAA seems to have been entirely unrelated to his employer.

2010 WL 2195294, *2.

The court in *Papale*, relied heavily on the fact that the NDAA did not have sufficient involvement with its members' employers, i.e., the district attorney's offices, and that the NDAA did not deal with employers regarding

employment matters in any capacity. The *Papale* court cited, in part, to several case to support its conclusion, including the following:

> Mandala v. Ca. Law Enforcement Ass'n, 561 F.Supp.2d 1130, 1133–36 (C.D.Cal. 2008)(holding that a law enforcement association was not an "employee organization" under ERISA, because it did not deal with employers, and because its members did not share a sufficient commonality of interests to be considered an "employees' beneficiary association"); Greenwood, 471 F.Supp.2d at 1052(finding that a dental hygienists' association was not an "employee organization" because it did "not require employment to be [sic] member," did "not deal with specificity towards any principal employer or group of employers, and its lobbying efforts .... [were] industry-wide, not specific to employee issues"); ... .

Id., n. 2.

Thus, the *Papale* court found that the NDAA was not an employee organization under ERISA since it did not deal with its members' employers, it did not take any efforts related to employment matters, it did not deal with employers regarding its members' insurance options (with respect to any policies), and there was no evidence that connected the NDAA to its members' employers. As such, the court in the present case must look to see whether the PBA conducted activities or any efforts related to employment matters with employers on behalf of its members. What is therefore important is the interaction and dialogue, if any, between the PBA and its members' employers regarding any employment matters. As such, the court must consider if there is any evidence that the PBA had the role of "dealing with employers concerning an employee benefit plan, or other matters incidental

18

to employment relationships." 29 U.S.C. §1002(4).

The court must also determine if the PBA, as the plan sponsor, was "a 'bona fide' association of employers tied by a common economic or representation interest, unrelated to the provision of benefits." Gruber v. Hubbard Bert Karle Weber, Inc., 159 F.3d 780, 787 (3d Cir. 1998); Solis v. Koresko, 884 F.Supp.2d 261, 275 (E.D.Pa. 2012). That is to say, the court must see if the PBA has a "bona fide" organizational relationship among its members and is not simply an association for the purpose of qualifying for benefits. The court must also consider whether "the employer-members of the organization that sponsors the plan [i.e., the PBA] exercise control, either directly or indirectly, both in form and in substance, over the plan." Solis v. Koresko, 884 F.Supp.2d at 275 (citing *Gruber, supra*). Further, "the employer members of the [PBA must have a] commonality of interest apart from the provision of benefits to their employees." Id., at 275-76. The court in *Gruber* stated that "a sufficient bond exists between employers engaged in the same line of business in the same geographical area." Gruber v. Hubbard Bert Karle Weber, Inc., 159 F.3d at 787.

The court finds the *Papale* case distinguishable from the instant case. The PBA's role with respect to enrolling PBA members into the PBA members Plan was very different than the role of the NDAA regarding Papale's direct purchase of a life insurance policy from Reliance which Papale paid for. In the present case, Reliance has demonstrated that it is the PBA's responsibility to

ensure that those seeking to enroll in the PBA members Plan meet the eligibility requirements stated in the Policy, that "[f]or an employer to participate in the PBA members Plan, all active, full-time employees must enroll", and that "[e]mployers participating in the PBA members Plan must pay 100% of the premiums for all eligible employees." (Doc. 21, Ex. A, ¶'s 8-10). Also, individual members of the PBA could not enroll in the Plan, rather the employer members of the PBA had to enroll their employees. There is no indication in *Papale* that the NDAA had any of the stated obligations and the level of involvement with the Plan that the PBA had.

Reliance argues that the PBA members Plan is comprised of employers engaged in the same type of business, namely, the business of building and remodeling homes, and that the PBA's bylaws demonstrate that its members share a common interest in the housing industry. Reliance cites to the PBA's website and the website for its bylaws. (Doc. 35, at 5). The PBA's website indicates that:

> We are a non-profit statewide trade association chartered in 1952. Affiliated with the National Association of Home Builders and a network of 38 local associations throughout the state, PBA is the unified voice for the home building industry and the housing consumer. We serve our members by providing proactive leadership on state regulatory and legislative issues. We proudly offer a variety services to our local associations that enhance the professionalism of our members.

The mission of the PBA is to "support[] building industry professionals in delivering quality living environments." The PBA also provides training to its

members and has statewide officers and a board.

Reliance cites to Kanne v. Connecticut General Life Ins. Co., 867 F.2d 489 (9th Cir. 1988), for support and indicates that the court found that a builders' association similar to the PBA was an employee organization for purposes of ERISA. The court visited PBA's website and finds that Reliance accurately portrays its content as discussed above. The court also agrees with Reliance that a sufficient bond exists between employers participating in the PBA members Plan who were engaged in the same line of construction business related to building and remodeling homes and who were engaged in "the building shelter business" in the Commonwealth of Pennsylvania, i.e., same geographical area. Membership in the PBA is a prerequisite to participate in the PBA members Plan. Further, there was interaction between the PBA and its members' employers regarding employment matters and there is evidence that the PBA had the role of dealing with employers concerning the PBA members employee benefit plan since Reliance is not responsible for enrolling participants into the PBA member Plan, and it is the "PBA's responsibility to ensure that those seeking to enroll in the PBA members Plan meet the eligibility requirements stated in the Policy." (Doc. 21, Ex. A, ¶'s 7-8).

In the case at bar, there is no individual LTD policy issued to plaintiff. On the contrary, plaintiff had LTD coverage under a group policy underwritten by Reliance that was established and maintained by the PBA, i.e., the PBA

members Plan. In order to be covered under the LTD policy at issue, a person has to be a member of the PBA. As mentioned, there is no question plaintiff alleged in his complaint that at all relevant times, he was a member of the PBA and that he was not employed by PBA or any of its affiliates.[5] (Doc. 1, at ¶ 8). The LTD policy was not issued by Reliance only to plaintiff and if it was, there would be no question that the LTD policy was not an ERISA plan as the *Matinchek* case makes clear. *See Matinchek, supra*. The court agrees with Reliance that the *Matinchek* case does not apply since Matinchek and his wife were the sole owners of the Matinchek Funeral Home and they were the only persons covered under the John Alden insurance policy. It is clear that plaintiff was not the only person covered under the LTD policy at issue, and that this policy covered many other persons unlike the policy in *Matinchek*. (Doc. 43, at 9-10);[6] (Doc. 21, Ex. A). Reliance states that the Plan in this case "must be viewed as a whole and not just with respect to [plaintiff]" and cites to Gross v. Sun Life Assur. Co. of Canada, 734 F.3d 1 (1st Cir. 2013), for support. (Doc. 21, at 5). Thus, if there are only the owners of a business who are covered under the plan when the plan is established, as in *Matinchek*, then it is not covered under ERISA. In the present case, Reliance has

---

[5]Reliance repeatedly misstates that plaintiff admitted that he was not a member of the PBA. (Doc. 21, at 2, 7-8). As noted, plaintiff clearly alleged in his complaint that he was a PBA member. (Doc. 1, ¶ 8).

[6]The transcript from the June 18, 2014 oral argument was docketed on March 11, 2015, at the request of the court. (Doc. 43).

demonstrated through an affidavit of Theresa Kowalchick, Director of Reliance's Integrated Claims Department, that the PBA members Plan, including the LTD policy, was issued to the PBA for its employee organization members which included numerous members in addition to plaintiff, and that the employers paid the premiums for each of their employees. (Doc. 21, Ex. A, ¶ 11); (Doc. 43, at 11).

Reliance essentially maintains that the PBA is an employee organization under ERISA since it is "a group of employers of a like minded or similar business interest that come together to support the interest of their members" and since the employer members of the PBA had to enroll in the policy and, enroll all of their full time employees and pay all of the premiums for their employees. As such, individual members of the PBA could not enroll in the policy, rather the employer members of the PBA had to enroll their employees. (Doc. 43, at 7-8). Plaintiff was a participant in the LTD policy that was sponsored by the PBA, as he was enrolled through his construction business which was the employer member, and the individual employers, such as plaintiff, who participated in the policy paid their own premiums. Thus, the LTD policy was not plaintiff's individual policy and as Reliance stated, "This is a policy issued to PBA for its employee organization members, and not only [plaintiff], but hundreds and hundreds of others." (Doc. 43, at 11); (Doc. 21, Ex. A).

Reliance also contends that even though plaintiff paid his own premiums

23

for the LTD policy and he was the sole owner of his construction business, his coverage under the policy cannot be segregated outside of the entire policy and the policy as a whole must be considered. In looking at the policy as a whole, the court agrees with Reliance that it is a policy for the PBA and not a policy for plaintiff's business. (Doc. 21, Ex. A). For support, Reliance states that a participant is defined in ERISA as "an employee or former employee or any member or former member of an employee organization." (Doc. 43, at 12). *See* 29 U.S.C. §1002(7). As such, since ERISA applies to the PBA members Plan, it applies to plaintiff's claim under the LTD policy. *See* Raymond B. Yates, M.D., P.C. Profit sharing Plan v. Hendon, 541 U.S. 1, 21, 124 S.Ct. 1330 (2004). Reliance has shown that there are non-owner employees as well as many employers covered by the PBA members Plan, and that for an employer to participate in the Plan all of its active, full-time employees had to enroll. Thus, ERISA applies to all claims under the PBA members Plan, including plaintiff's claim. (*See* Doc. 21, Ex. A).

In its supplemental briefs, (Doc. 35; Doc. 41), Reliance cites to the case of Chao v. PBA, Civil No. 08-1564 (M.D.Pa.), and a consent judgment which was reached in August of 2008 between Department of Labor ("DOL") and the PBA in which the PBA did not contest the applicability of ERISA to the plans its sponsored. Reliance states that "[i]n deciding whether ERISA applies to the PBA-sponsored Plan, this court does not need to look past the fact that the government agency tasked with enforcing ERISA has already determined

24

that PBA established and maintained an employee welfare benefit plan within the meaning of ERISA." (Doc. 35, at 2) (citing Chao v. PBA, supra). Reliance also points out that the DOL's complaint in Chao v. PBA described the PBA as the sponsor of a Trust and the Trust was alleged to be "an employee welfare benefit plan within the meaning of Section 3(3) of ERISA" and "a welfare plan which provides health, life insurance, dental, vision and temporary disability benefits to participant." (Doc. 35, at 2). Reliance notes that its Standard Policy was part of the Trust and that the DOL's complaint referred only to STD benefits since Reliance did not issue its LTD policy until two years later. (Id., at n. 2). In Caho v. PBA, the PBA paid restitution to the Trust as well as a penalty under ERISA pursuant to a consent judgment.

Reliance also states that in the DOL's complaint, "Builder Services, Inc., is identified as the administrator of the PBA Trust and a fiduciary of the Plan within the meaning of ERISA" and that this is why "the Reliance Standard policy for PBA members was issued to Builders Services, Inc.[,] rather than PBA directly and confirms the inclusion of the long term disability coverage in the ERISA-governed PBA Trust/Plan at issue in *Chao*." (Id., at 2-3); (See Doc. 21, Ex. C; Doc. 5, Ex. C). Under Chevron v. Natural Res. Def. Council, 467 U.S. 837, 842-44 (1984), Reliance urges the court to afford deference to the DOL's opinion that the PBA members Plan is governed by ERISA. (Id.).

Reliance also states that the PBA was the plaintiff in an ERISA action it filed in this district, namely, Pennsylvania Builders Ass'n Benefits Trust v.

25

Capital Blue Cross, Civil No. 07-561, M.D.Pa. March 25, 2008. See 2008 WL 818891 (M.D.Pa. March 25, 2008). In this case, the court, quoting the complaint, described the PBA Trust as "a multi-employer health and welfare fund comprising 'various members of the building shelter industry in Pennsylvania.'" (Id., at 3-4); 2008 WL 818891, \*1. *See* Ferguson Elec. Co., Inc. v. Foley, 115 F.3d 237, 240 n. 6 (3d Cir. 1997) (Third Circuit noted it was undisputed that the Associated Builders and Contractors apprenticeship program established an ERISA plan).

Based on the foregoing discussion, the court agrees with Reliance and finds that the PBA has a "bona fide" organizational relationship among its members and is not simply an association for the purpose of qualifying for benefits, and that it is an employee organization under ERISA. Thus, the PBA members Plan is an employee welfare benefit plan and is covered by ERISA. Therefore, Reliance has met its burden of showing the PBA members Plan is an employee welfare plan over which this court has subject matter jurisdiction. As discussed below, the court finds that plaintiff's claims are preempted by ERISA since they relate to the PBA members Plan, which is an ERISA plan, and its administration. His claims are based on the existence of the Plan and, they involve the interpretation of the Plan's terms. As such, removal was proper by Reliance since ERISA preempts plaintiff's claims and plaintiff's motion to remand will be denied. *See* Menkes v. Prudential Ins. Co. of America, 762 F.3d 285, 293-96 (3d Cir. 2014) (ERISA's broad preemption

clause, §514(a), provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [subject to ERISA]." (citing 29 U.S.C. §1144(a)); Pane v. RCA Corp., 868 F.2d 631, 635 (3d Cir. 1989) ("breach of contract claim expressly preempted").

## B. ERISA Safe Harbor Regulations

Additionally, the PBA members Plan falls outside of the ERISA safe harbor protection. In Stone v. Disability Management Services, Inc., 288 F.Supp.2d 684, 691 (M.D.Pa. 2003), the court stated:

> The Department of Labor has issued "safe harbor" regulations that exempt certain policies from the definition of an employee welfare benefit plan under ERISA. A plan is not an employee welfare benefit plan when:
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deduction or dues checkoffs.

See 29 C.F.R. §2510.3–1(j); Menkes v. Prudential Ins. Co. of America, 762

F.3d at 292-93.

"All four factors must be met for a plan to fall within the regulation's safe harbor." Stone v. Disability Management Services, Inc., 288 F.Supp.2d at 691. (citation omitted); Menkes v. Prudential Ins. Co. of America, 762 F.3d at 293.

In this case, two factors are not met since "employers participating in the PBA members Plan must pay 100% of the premiums for all eligible employees" and "[f]or an employer to participate in the PBA members Plan, all active, full-time employees must enroll." (Doc. 21, Ex. A, ¶'s 9-10). Thus, the PBA members Plan was outside of the ERISA safe harbor protection.

### C. Preemption of Plaintiff's Claims Against Reliance

As stated, Reliance's motion to dismiss will be granted since ERISA preempts plaintiff's state law claims raised in his complaint for breach of contract and bad faith and, it is not disputed that plaintiff did not exhaust his administrative remedies before he filed this action as required under ERISA. State court jurisdiction is preempted under ERISA for claims by a plan participate to recover benefits due under his plan. See Menkes v. Prudential Ins. Co. of America, 762 F.3d at 296 (breach of contract claim preempted by ERISA since it relates to the administration of the ERISA plan); Barber v. Unum Life Ins. Co. of America, 383 F.3d 134, 140 (3d Cir. 2004) (Third Circuit remanded case to district court with instruction to dismiss plaintiff's bad faith claim because it was preempted by ERISA); Kirshy v. Life Ins. Co. of North

28

America, 2011 WL 1691097 (M.D.Pa. (May 04, 2011) (claims for breach of contract, bad faith, and the UTPCPL are all preempted by §514(a)); Ferguson Elec. Co., Inc. v. Foley, 115 F.3d 237, 240 (3d Cir. 1997) ("ERISA preempts 'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....'" 29 U.S.C. §1144(a)). Additionally, plaintiff's claim for punitive damages is also preempted. *See* Menkes v. Prudential Ins. Co. of America, 762 F.3d at 296 ("The plaintiffs' claim for punitive damages is conflict preempted by ERISA's exclusive civil remedy scheme in §502(a).").

### D. Exhaustion of Administrative Remedies

Finally, Reliance asserts in its motion to dismiss that the plaintiff failed to exhaust his administrative remedies that were specifically provided in the December 9, 2013 letter denying his claim for LTD benefits. (Doc. 5, Ex. A). Plaintiff concedes that he did not file an appeal since he did not view his LTD policy as being governed by ERISA. (Doc. 10, at 7).

In Harding v. Provident Life and Acc. Ins. Co., 809 F.Supp.2d 403, 420 (W.D.Pa. 2011), the court discussed the exhaustion requirement under ERISA and stated:

> Administrative exhaustion under ERISA is a judicially-created affirmative defense, which has been adopted by the United States Court of Appeals for the Third Circuit. Metropolitan Life Ins. Co. v. Price, 501 F.3d 271, 280 (3d Cir. 2007) ("The exhaustion requirement [under ERISA] is a nonjurisdictional affirmative defense."). Under prevailing Third Circuit precedent, a plaintiff cannot seek relief in the federal courts for an ERISA claim unless

he or she has first exhausted available administrative remedies under the particular ERISA plan. See D'Amico v. CBS Corp., 297 F.3d 287, 291 (3d Cir. 2002); see also Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir. 2002); Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990). "Courts require exhaustion of administrative remedies 'to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned.'" Harrow, 279 F.3d at 249 (citing Amato v. Bernard, 618 F.2d 559, 567 (9th Cir. 1980)).

(Footnote omitted).

In the present case, plaintiff undisputedly failed to exhaust his administrative remedies and this is a viable affirmative defense asserted by Reliance since plaintiff seeks to enforce the terms of the LTD policy and receive the benefits he alleges are due thereunder as well as damages for denying his claim. *See Harding, supra* (citing D'Amico, 297 F.3d at 291).

## IV.   CONCLUSION

Accordingly, the court will deny plaintiff's motion to remand this case to state court, Doc. 6, and will grant Reliance's motion to dismiss plaintiff's complaint, Doc. 4. An appropriate will be issued.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: March 17, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-0714-01.wpd